UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL |
| | ) | |
| Plaintiff, | ) | Laredo, Texas |
| | ) | Wednesday, January 15, 2020 |
| vs. | ) | (10:05 a.m. to 10:28 a.m.) |
| | ) | |
| ADRIANA ALEJANDRA GALVAN-CONSTANTINI, | ) | CASE NO: 5:17-CR-00560-5 |
| | ) | |
| | ) | |
| Defendant. | ) | |

STATUS CONFERENCE / SENTENCING (IN ABSTENCIA)

BEFORE THE HONORABLE MARINA GARCIA MARMOLEJO,
UNITED STATES DISTRICT JUDGE

Appearances:          See next page

Case Manager:         Angie Trevino / Erica Lopez

Court Recorder [ECRO]:   Edgar Hernandez

Deputy U.S. Marshal:  Bobbie Molina

Transcribed by:       Exceptional Reporting Services, Inc.
                      P.O. Box 8365
                      Corpus Christi, TX 78468
                      361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**


Plaintiff:                      JOSE ANGEL MORENO, ESQ.
                                Assistant United States Attorney
                                P.O. Box 1179
                                Laredo, Texas 78042-1179


Defendant:                      OSCAR O. PENA, ESQ.
                                1720 Matamoros
                                Laredo, Texas 78040


U.S. Probation:            Gary Weiss / Ramon Mendiola

U.S. Pretrial Services:  Ana Rodriguez / Laura Cruz

3

1        **Laredo, Texas; Wednesday, January 15, 2020; 10:05 a.m.**

2                            **Call to Order**

3          **COURT SECURITY OFFICER:**  All rise.

4          **THE COURT:**  Thank you, you may be seated.  We'll go

5     ahead and continue with our Sentencing docket beginning with

6     *Adriana Alejandra Galvan-Constantini.*

7                Oh, I know that we have Mr. Arciniega-Hernandez,

8     let's go ahead and have him sit down, let me take up the other

9     case.  And he can stay in the courtroom, that's fine.

10               Mr. Pena?

11         **MR. PENA:**  Oscar O. Pena for Adriana Alejandra

12    Galvan-Constantini.

13         **THE COURT:**  Yes.

14         **MR. PENA:**  Your Honor, I have made efforts to --

15         **THE COURT:**  Excuse me, now we're missing Mr. Moreno,

16    I didn't realize he wasn't back.

17         **MR. PENA:**  I will wait around, your Honor.

18         **THE COURT:**  Thank you.

19         **MR. SPEAKER:**  (indisc.)

20         **THE COURT:**  No, you can take a break because

21    otherwise he would be in the back anyway.

22         **(Pause)**

23         **THE COURT:**  Okay, so, Mr. Moreno, I just called the

24    case of Adriana Alejandra Galvan-Constantini, Defendant Number

25    5 in Cause Number 17-0560, and Mr. Pena was about to make an

4

1  announcement.

2          Mr. Pena?

3          **MR. PENA:**  Good morning, your Honor.  Oscar O. Pena

4  for Adriana Galvan-Constantini.

5          We're scheduled for sentencing today.  I have made

6  numerous efforts to contact my client by telephone, by email,

7  by text, as well as by written letter sent by US mail.

8          I have not had any communication with my client; in

9  other words, she has not returned any of my communications, or

10  as far as I know made any effort to communicate with me or my

11  office since prior to the originally scheduled sentencing date

12  which was several months ago, your Honor.

13          **THE COURT:**  Okay.

14          **MR. PENA:**  And that is why she is not here present

15  today, your Honor.

16          **THE COURT:**  And just a little bit of procedural

17  history and it will be the same as to what we covered this

18  morning with the co-Defendant, who happens to be her husband,

19  Mr. Montes-Patino, but both of these individuals were notified

20  of a sentencing hearing date originally for me, and my

21  understanding and recollection is that both you and Mr. Balli,

22  on behalf of your respective clients, have reviewed the

23  Presentence Investigation Report; that Ms. Constantini and

24  Mr. Patino were traveling down from Dallas just to do some

25  additional preparation for the sentencing hearing and then just

5

1    didn't show up the date of the sentencing, and no ability or

2    there was no way for you to reach them.  And I guess our belief

3    right now is that they have voluntarily chosen to not come in

4    for a hearing that they were aware of and may, in fact, be in

5    Mexico or some other country.

6            And so, again, Mr. --

7            **MR. PENA:**  That's -- forgive me, your Honor, I did

8    not mean to interrupt you.

9            **THE COURT:**  No, no, no, that's fine.  Is that your

10   understanding, Counsel?

11           **MR. PENA:**  That is correct, your Honor, as far as I

12   know.

13           **THE COURT:**  Okay.  I have someone here from the

14   Marshals and also someone from the Probation/Pretrial

15   Department.

16           Do you want to add anything for Ms. Constantini, or

17   is the same as for Mr. Montes-Patino?

18           **UNITED STATES MARSHAL HINOJOSA:**  Yes, your Honor.

19           **THE COURT:**  And, again, just for the record, tell us

20   your name.

21           **UNITED STATES MARSHAL HINOJOSA:**  I'm Abel Hinojosa

22   for the US Marshals.

23           **PROBATION OFFICER RODRIGUEZ:**  Ana Rodriguez for the

24   US Probation.

25           **THE COURT:**  Okay.  We'll begin with the Marshals.

1          **UNITED STATES MARSHAL HINOJOSA:**  Your Honor, on June

2   26th our counterparts, Deputy US Marshals in Irving, Texas went

3   to interview -- they interviewed Daniel Galvan who is the

4   brother to Adriana Constantini.

5          The brother had then stated that a month prior to the

6   Deputies visiting them Adriana had called her brother and her

7   sister, Erica, to come -- who was then living in Mexico, to

8   come to Irving so they could help her run her business which is

9   Antaya (phonetic) Insurance.

10          When they got there they turned over the insurance to

11   them, and then -- and then they haven't heard or seen her at

12   all or any communication from her.

13          **THE COURT:**  Which, I guess, that was kind of

14   suspicious act in and of itself, except it could also be that,

15   yes, they were getting ready for sentencing and wanted family

16   members to help with the business.

17          **UNITED STATES MARSHAL HINOJOSA:**  Correct.  And it

18   collaborates a month ago, the Deputies interviewed them --

19   interviewed him on the 26th of June and he said that a month

20   before, which kind of makes the time when he was going to get

21   sentenced somewhat -- or they were going to get sentenced.

22          **THE COURT:**  Right.

23          **UNITED STATES MARSHAL HINOJOSA:**  On that same day, on

24   July the 5th -- on July the 5th of 2019 the same Deputies US

25   Marshals went to interview Francisco Zavala.  Francisco Zavala

1  is the co-suretor.

2          **THE COURT:**  Uh-huh (yes.)

3          **UNITED STATES MARSHAL HINOJOSA:**  He said that he

4  hadn't heard from Adriana Constantini and her husband, Luis

5  Montes-Patino, the same as a month -- in a month, not seen

6  them.

7          They interviewed him and they told him about what was

8  going on, but he ended his interview saying that he doesn't

9  know anything.  Then the Deputies, they, of course, they leave

10  a contact number and stated that if he knows anything on their

11  whereabouts to contact them.  And Mr. Francisco Zavala ended

12  his conversation or his interview by saying "even if she's in

13  Mexico?" and that was the end of the interview.

14          **THE COURT:**  Right.

15          **UNITED STATES MARSHAL HINOJOSA:**  And that was on July

16  5th, 2019.

17          **THE COURT:**  Okay, very well.

18          **PROBATION OFFICER RODRIGUEZ:**  Okay, your Honor.  For

19  me the last time I attempted contact with Adriana Constantini

20  was yesterday.  The phone did ring, but voice -- the voicemail

21  came in.  I left a message for her to call.

22          I also attempted to contact her this morning.  I left

23  a voice message as well.

24          Yesterday afternoon I also attempted to call the co-

25  surety one, J. Zavala.  There was no answer, and a voice

1  message was left.

2          We also established contact with the sister, Erica

3  Galvan.  She actually did answer our phone call, and what she

4  told us was that the last time she spoke to her sister was back

5  in May of 2019.  She did add that she purchased the Antaya

6  Insurance Company from her sister back in March of 2019 for

7  $5,000.

8          And Ms. Erica Galvan also included that the house

9  that Adriana Constantini was residing at and was the owner was

10  sold to Miguel Escobar (phonetic) who is a friend from work,

11  and we did a search through the Dallas (indisc.) district and

12  it's confirmed that the deed transfer date was May 14th, 2019.

13          I did tell the sister if she could get ahold of her

14  and ask her to surrender, and she was a little bit nervous, and

15  she said "You know what, let me ask around to see if I can

16  locate her, and if I do I will deliver the message."

17          **THE COURT:**  Okay.  All right.  Well, thank you both

18  for the update.

19          All right, so then at this time unless, Mr. Moreno,

20  do you want to add anything?

21          **MR. MORENO:**  Nothing further, your Honor.

22          **THE COURT:**  The Court is going to find that both

23  Ms. Constantini and her husband, co-Defendants in the 0560

24  case, were aware of scheduled proceedings, that they

25  voluntarily absented themselves from the proceedings.

1          There is no serious question or possible doubt that

2    anything else could have accounted for their absence other than

3    the voluntary decision to not come into scheduled proceedings

4    and flee the country, and so because of that it is appropriate

5    to go forward with their sentencing in absentia.

6          All right, so, Mr. Pena, you have reviewed the PSR.

7    I know you had already reviewed it with your clients.  You

8    filed some very detailed objections and I don't need you to re-

9    urge all of them, but we can just go through them one-by-one so

10   that the record will reflect my rulings on the objections.

11         And I guess beginning with the one that has to do

12   with the amount of money that the Defendant is being held

13   accountable for.

14         I understand originally it was a Level 22 as scored

15   by the Probation office.  The Government objected to the

16   calculation stating it failed to account for over 4.2 million

17   dollars.

18         Probation eventually reviewed everything and ended up

19   agreeing with the Government's version.

20         I did my own independent review of the evidence and

21   recalled Exhibits -- Government Exhibits 10 through 12;

22   specifically ledger entries in the C.S.'s notebooks and the

23   C.S.'s testimony and interpretation of all of that, and believe

24   that there is ample evidence to support the Level 26.

25         So that objection which, again, you were very

1    detailed about, will be noted and overruled for the record.

2            Do you want to add anything on that one, Mr. Pena?

3            **MR. PENA:**  No -- well, I will only note that the

4    amount that was added to the figure in the original PSR was

5    4 million 291,000 approximately.  It basically tripled the

6    amount originally alleged that was transported by my client.

7            There is some case law, as I cited in my response, in

8    my objections, indicating that when we have such a large change

9    in the figures, basically tripling the amount, that the Court

10   may consider whether or not something more than a preponderance

11   of the evidence standard should be applied.  I assume -- I'm

12   familiar with your Honor and your Honor's practices, I'm sure

13   that you considered that.

14           **THE COURT:**  Yes, I did.

15           **MR. PENA:**  I wanted to mention it on the record.

16           **THE COURT:**  And I think you're referring to *US v*

17   *Harris,* the Fifth Circuit 2007 case.  The Defendant in that

18   case was convicted of 21 counts of aiding in the preparation of

19   a false tax return with a total tax loss of about 1.3 million

20   dollars, and in that case the Circuit rejected the Defendant's

21   argument that a higher standard of proof applied in determining

22   "the amount of tax loss for purposes of Guidelines."

23           And here what we have is a difference of a Base

24   Offense Level of 22 to 26, and so my belief is that it doesn't

25   trigger the higher standard, that proof by a preponderance of

1    the evidence is sufficient and adequate and, again, this is a

2    sentencing issue.  There was no special finding by a jury

3    because it's not required, but the Court believes that there

4    was enough there to support the level of 26.

5            **MR. PENA:**  Yes, your Honor.

6            **THE COURT:**  All right.  So then moving onto your next

7    objection, Mr. Pena, it was the sophisticated laundering plus 2

8    level enhancement is what I show as the next objection, and I

9    think what you indicated, and I'll just summarize your

10   arguments and you-all can tell me if you want to add something,

11   you said Defendant's own conduct involved physically

12   transporting money and structuring three transactions which, in

13   your opinion, was not particularly sophisticated, and most of

14   the Guideline examples involve comparatively more sophisticated

15   conduct, and although money laundering in and of itself tends

16   to be complex in nature the scheme here was not more

17   sophisticated than an average money laundering scheme, so

18   that's how I summarized your objections.

19           The Government responded and said money laundering

20   is, in fact, sophisticated and it's relevant here and it

21   involves two or more levels of transactions, transportation

22   transfers and Government says it's not necessary that each

23   level be complex on its own, or that individually personally

24   participates -- or that each individual person participate in

25   each level, and they're referring to the *Charon* case,

1    C-H-A-R-O-N 44 2d F3d 881, 8892 Fifth Circuit 2006 case.

2            The Government also noted that the Black Market Peso

3    Exchange schemes "arguably are the most sophisticated means of

4    laundering illicit money which is precisely why such schemes

5    are so successful."

6            And as you-all know, I mean, I was the trial Judge, I

7    have heard all of the evidence.  We even called an expert to

8    talk about the Black Market Peso Exchange because it is, in

9    fact, a sophisticated scheme that takes some degree of

10   comprehension and mapping out and understanding how it worked,

11   and so the Court notes your objection, understands the

12   arguments and overrules the objection.

13           Let's see, the other objection -- I think that was

14   it, Mr. Pena.

15           **MR. PENA:**  There was a request for a variance, your

16   Honor.

17           **THE COURT:**  Right.

18           **MR. PENA:**  I'll make it brief, I'm sure your Honor

19   has read it.

20           The interesting sort of feature of this case was that

21   there had been a number of years that had elapsed between the

22   time of the offense and the time of the trial.

23           In addition to that Galvan-Constantini, my client,

24   did not have any criminal record.  She had a college education,

25   she was bilingual in both English and Spanish, and she had a

1    history of being employed or self-employed which would lead one

2    to believe that she had marketable skills and could become a

3    productive member of society.

4             I state all of that knowing that she's not here today

5    and that that does -- that will affect the argument, but it is

6    an argument that I wrote on paper and I just wanted to get on

7    record, your Honor.

8             And I think that there is something compelling about

9    the fact that so much -- so many years had elapsed between the

10   date of the offense and the date of the trial in which it

11   doesn't appear that there was any criminal activity.

12            I know that the Government is taking the position

13   that there was no criminal activity because the DEA had taken

14   some money from her.  But that -- that puts us in the realm of

15   mindreading, your Honor, and I would ask your Honor just to

16   take it at face value that she has no criminal record and that

17   there was a large lapse of time between the two, and that's

18   what I've got on my variance, your Honor.

19            **THE COURT:**  Very well.  And Mr. Balli made similar

20   arguments noting that, you know, Mr. Patino had never been in

21   trouble, in his case he was a lawful permanent resident, you

22   know, rehabilitation, future potential.

23            The complicating factor, too, is that they are

24   getting obstruction of justice and it's hard to argue and say

25   that someone has potential for rehabilitation, that they have

1   learned their lesson when they are fugitives, and I'm not

2   confusing one thing with another.  I know that they can be

3   charged later on with being fugitives and will be facing

4   additional punishment, but to now say "Well, we're going to

5   give you a variance 'cause a lot of time had elapsed and you

6   had never been in trouble" just doesn't seem to be appropriate

7   in light of obstruction and the facts before us.

8            Mr. Moreno, do you want to add anything?

9            **MR. MORENO:**  Your Honor, I think we expressed it all

10  in our reply.  It's our contention, of course is that even

11  after the money particularly the structuring of some of the

12  payments and the phone calls that were still intercepted

13  following that -- with that regard, and so we think she was

14  active even after the seizure and the occurrence there at the

15  airport.

16           I understand that what their argument was with

17  regards to the limitations, obviously, you know, the jury

18  disagreed, and I think rightfully so given the status of the

19  evidence and the testimony that was presented at trial, and so

20  given the fact that they did flee rather than face justice here

21  I don't think that she should be entitled to a variance and we

22  would object to it.

23           **THE COURT:**  She is correctly scored at 235 to 293

24  with a cap of 240.

25           What are you asking for, Government?

1     **MR. MORENO:**  Your Honor, to be honest I think that

2  she was more heavily involved than her husband who was

3  sentenced earlier today.  I think she was a much more active

4  participant.  And it doesn't seem to -- even between themselves

5  from listening to the phone calls had a lot of control over

6  that and dictated a lot of the measures and decisions that were

7  made, and so I would think that she would be more responsible,

8  and I think that given the sentence that was handed down this

9  morning that I would recommend to the Court to make the same

10  sentence that with this score pretty high above that, I think

11  the statutory maximum is 240 months, and I think the Court

12  should sentence her at that level.

13     **THE COURT:**  Okay.  And, Mr. Pena, are you asking for

14  a specific sentence?

15     I know Mr. Balli just kind of threw out 120 months

16  for no reason other than "I just want 120 months because it's a

17  long time anyway," but are you -- do you have a specific

18  request?

19     **MR. PENA:**  Well, your Honor, I have asked for a

20  variance.  Your Honor, I believe, has rejected my request for a

21  variance, and in light of that I would ask for the minimum

22  under the Guideline which I think is 235.

23     I think that the maximum reference is 240 if I'm not

24  mistaken, your Honor.  There's not a whole lot of difference

25  between 235 and 240, but I'll ask for 235 because I think it's

16

1    the right thing to do in light of the fact that your Honor has

2    rejected my request for a variance.

3              **THE COURT:**  Okay, thank you, sir.

4              All right, then if there isn't anything further,

5    Probation, I'm adopting the report as to Ms. Constantini.  It

6    is correctly scored.

7              I have looked at all of the 3553 factors.  I have

8    reviewed the detailed written objections.  I have given the

9    parties additional opportunity to argue them today, and I have

10   made my rulings on everything that has been raised before me

11   and found it proper.

12             Pursuant to the rules and case law I sentence her in

13   absentia because it was a choice that she made.  The sentence

14   will be 240 months.

15             It will be followed by a term of supervised release

16   of three years.

17             No fine, no restitution.

18             The forfeiture will be dealt with.  There is already

19   a preliminary request that was made.  There will be a fine

20   request that will be made in writing which will be considered

21   by the Court.

22             Mr. Pena, are you objecting to the forfeiture?  Do

23   you want to allocate as to that?

24             **MR. PENA:**  Your Honor, I believe that the forfeiture

25   provision, and it looks like it's roughly $155,000 and that

17

1    Mr. Patino and my client are jointly and severally liable.  Is
2    that still the case?
3                **MR. MORENO:**  I think they're jointly and severally
4    liable.  The Court has to make a specific finding as to each
5    Defendant's liability for the forfeiture itself.
6                **THE COURT:**  Individually.
7                **MR. PENA:**  I'm not in a position to raise an
8    objection at this point in time, your Honor.  If -- it appears
9    to me that the figure that was recommended by the Government in
10   their Motion is based on what my client is alleged to have
11   earned as part of her compensation for participating in the
12   scheme, and that appears to be correctly calculated, your
13   Honor, and so, no, I am not in a position to raise any kind of
14   objection at this point in time.
15               **THE COURT:**  Okay.  Then the Court has considered the
16   preliminary request and Counsel, on behalf of his client, who
17   is not here, has allocuted as it pertains to the forfeiture
18   issue and will waive the paperwork and the Court will grant a
19   Final Order for Forfeiture for the amount noted in the
20   Preliminary Order -- the Preliminary Request for Forfeiture.
21               All right, there is a mandatory assessment of $100.
22               I think I already stated no fine.
23               And she is a US citizen so all applicable standard
24   and mandatory conditions will be part of her judgment.
25               Any other special conditions recommended for her,

18

1    Probation?

2            **PROBATION OFFICER WEISS:**  No, your Honor.

3            **THE COURT:**  No?

4            **PROBATION OFFICER WEISS:**  No, your Honor.  No.

5            **THE COURT:**  Okay.  All right.  Government, anything

6    else as to Ms. Constantini?

7            **MR. MORENO:**  No, your Honor, we will file the Final

8    Order of Forfeiture with the Court today.

9            **THE COURT:**  Okay.  Mr. Pena, anything else for

10   Ms. Constantini?

11           **MR. PENA:**  Yes, two things, your Honor.

12           First of all, I will note that there was some

13   transfers of property mentioned before we got into the

14   Sentencing hearing.  I was not aware of those nor did I

15   participate in any of those transfers of property, Number 1.

16           And, Number 2, I wanted to respectfully request that

17   the Court reconsider my Motion for Withdrawal at this point.

18   I'll be happy to file another written Motion if the Court so

19   requires, but I would like to formally withdraw from the case.

20   Will -- does your Honor require that I re-file the Motion?

21           **THE COURT:**  No, I will grant it, Mr. Pena.  I will

22   grant your oral request.  You had previously filed a written

23   Motion.  However, I do want you to -- because apparently they

24   still have phones that have voicemail that seems to be working?

25           **MR. PENA:**  Yes, your Honor.

1        **THE COURT:**  So notify her that she was sentenced,

2   tell her what the sentence was, the conditions and that she has

3   a right to appeal the sentence to be filed within 14 days.  Or,

4   you know, I'm saying talk to her about her appellate rights.  I

5   don't know if she necessarily has a right, but I'm not going to

6   step in and give her that advise because, you know, again,

7   she's not here so I don't know if you would forfeit your right

8   to appeal when you don't show up for the proceedings, but I'm

9   not going to get involved in giving her any legal advice, but

10  I'm just saying that if you'll just do that final act, let her

11  know what the sentence was, let her know there are appellate

12  rights, you're no longer going to be her lawyer, she can confer

13  with other lawyers.  There's a 14-day deadline to file a Notice

14  of Appeal assuming it hasn't been waived, and I think other

15  than that at some point here you'll get a final copy of the

16  Judgment once we enter that, and if you could just mail it to

17  the last known address, after that we will let you out of the

18  case.

19        **MR. PENA:**  I can handle that as a -- it seems that

20  the cleanest way to handle that is by refiling a Motion to

21  Withdraw where I list all of those efforts that were made.

22        **THE COURT:**  Okay.

23        **MR. PENA:**  Would that work for the Court?

24        **THE COURT:**  Yes, that's even better.

25        **MR. PENA:**  Oh, yes, your Honor, that way we keep it

1    on record and it's clean.

2            **THE COURT:**  I agree.

3            **MR. PENA:**  That is all I have, your Honor.

4            **THE COURT:**  Thank you.

5            Mr. Moreno, anything else?

6            **MR. MORENO:**  Nothing further as to Galvan-

7    Constantini.

8            **THE COURT:**  Okay, very well.  Thank you, Mr. Pena.

9            **MR. PENA:**  Thank you, your Honor.

10           May I be excused?

11           **THE COURT:**  Yes, sir.

12           **MR. PENA:**  Thank you.

13        **(This proceeding was adjourned at 10:28 a.m.)**

14

15

16

17

18

19

20

21

22

23

24

25

## **CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

**January 28, 2020**

          **Signed**                                    **Dated**

                    *TONI HUDSON, TRANSCRIBER*